

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

<table>
<tr><td>UNITED STATES OF AMERICA</td><td></td></tr>
<tr><td>v.</td><td>Case No. 1:25-CR-173 (PTG)</td></tr>
<tr><td>MONIA SPADARO,</td><td></td></tr>
<tr><td>Defendant.</td><td></td></tr>
</table>

FILED
IN OPEN COURT

JUN - 8 2026

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## STATEMENT OF FACTS

The United States and the defendant, MONIA SPADARO ("the defendant" or "SPADARO"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence, all dates listed being on or about the date indicated:

1.    On or about May 22, 2025, at approximately 3:38 a.m., SPADARO[1] drove a gray Toyota Corolla ("Toyota") onto the Central Intelligence Agency ("CIA") Headquarters ("HQ") installation located in Fairfax County, Virginia, which is within the special maritime and territorial jurisdiction of the United States and the Eastern District of Virginia. SPADARO drove her Toyota into the CIA HQ installation that night while she was intoxicated by alcohol, with a blood alcohol level content of at least 0.183 grams of alcohol per 100 milliliters of blood. SPADARO lacked authorization to enter the restricted CIA HQ installation.

2.    That evening, SPADARO drove her Toyota on Route 123 in Fairfax County, Virginia, and then turned her Toyota and drove into the CIA HQ installation on the wrong side of the road (driving inbound in the outbound lanes of traffic), prompting a uniformed CIA Police

---

[1] SPADARO was the driver and sole occupant of the Toyota that night.

1

officer (Officer 1) driving a marked CIA police car to attempt a traffic stop. Officer 1 activated the emergency lights on his police car and drove head-on toward SPADARO's Toyota in the outbound lane. SPADARO drove into the CIA installation in the outbound lanes of traffic even though the outbound lanes were marked with two "do not enter" signs.

3.    SPADARO did not stop driving despite these signals from law enforcement and instead turned and drove around Officer 1's car into the inbound lanes and continued toward the main security gate. Officer 1 turned around and continued pursuit, also activating his car's emergency siren. A second CIA Police officer (Officer 2) entered a separate marked CIA Police car at the security gate, activated his emergency lights, and drove towards SPADARO to attempt to pull over SPADARO's Toyota. SPADARO also drove around Officer 2's police car and crossed back into the outbound lanes of traffic.

4.    SPADARO disregarded visible and audible signals from law enforcement officers to stop and continued driving toward the main security gate in the outbound lanes, while increasing the Toyota's speed. A third CIA Police officer (Officer 3) was standing on foot near the security gate as SPADARO continued in the direction of him and the gate. Officer 3 moved into the innermost outbound lane and yelled at SPADARO to stop. SPADARO did not stop and continued driving in the innermost outbound lane. Contemporaneously, Officer 3 fired his weapon and SPADARO maneuvered out of the innermost outbound lane, driving around the officer into the inbound lanes.

5.    SPADARO then drove past Officer 3 and struck one of the barriers at the CIA HQ's main gate. Afterwards, SPADARO was transported by ambulance to the hospital.

6.    At the hospital, SPADARO's blood was drawn, stored, and tested. On a later date, an independent laboratory also tested a blood sample drawn at the hospital. These tests revealed

2

that SPADARO's blood from the night of May 22, 2025, contained at least 0.183 grams of alcohol per 100 milliliters of blood.

7.      This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case. Furthermore, this statement of facts is an admission of the defendant that can be used in subsequent court proceedings against her. This statement of facts does not constitute and are not part of compromise negotiations under Fed. R. Evid. 410 or any other provision of federal law. As such, the defendant agrees that this statement of facts should not be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

8.      The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

Date:   June 8, 2026            By:   _____

Cameron M. Etchart
Special Assistant United States Attorney (LT)
Kathleen E. Robeson
Assistant United States Attorney

3

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MONIA SPADARO, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
MONIA SPADARO

I am Todd Richman, Esq., the defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
Todd Richman, Esq.
Attorney for MONIA SPADARO

4